

Adam E. Collyer
77 Water Street, Suite 2100
New York, New York 10005
Adam.Collyer@lewisbrisbois.com
Direct: 646.783.1723

April 16, 2020

File No. 37986.2718

**VIA ELECTRONIC FILING**

The Honorable Ona T. Wang
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:   *Aguilar, et al. v. T Bar Management East, LLC, et al.*
              Docket No. 19-CV-03867 (PAE) (OTW)

Dear Judge Wang:

    As counsel to the parties in this matter, we write today on behalf of Defendants and Plaintiffs William Aguilar, Alberto Moreno, and Benny Torres ("Plaintiffs") to respectfully request that the Court approve the settlement reached in this matter. Specifically, we ask that the settlement be approved and that this action be dismissed with prejudice, as the terms of the resolution here are fair and reasonable and in line with other settlements approved in this Court and in the Second Circuit.

    In this action, Plaintiffs allege, *inter alia*, that Defendants failed to pay the minimum wage or the overtime premium for time worked in excess of 40 hours per week, in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Plaintiffs further allege that Defendants failed to provide them with wage notices in compliance with the Wage Theft Prevention Act terms of the NYLL. Additionally, because of Defendants' alleged failure to pay overtime, Plaintiffs assert that the wage statements that were provided, to the extent they received wage statements, were not compliant with New York state law. Finally, Plaintiffs allege that they were not paid the required spread-of-hours premium for shifts worked in excess of 10 hours.

    Defendants expressly deny the claims made against them.

    On August 8, 2019, the parties appeared before the Court for an initial conference. At the initial conference, Defendants requested, without objection from Plaintiffs, the opportunity to

The Honorable Ona T. Wang
April 16, 2020
Page 2

mediate this matter through the Southern District of New York's ("SDNY") mediation program for wage and hour matters. On September 13, 2019, the Court referred the matter to mediation.

Prior to mediation, the parties engaged in substantive discovery. The parties also discussed prospective resolution and their differences concerning the conditional certification of a putative collective action. On December 18, 2019, after four months of discovery and an exchange of hundreds of pages of documents and records, the parties mediated the matter before Stephen A. Marshall, a member of the SDNY's *pro bono* panel. Unfortunately, the two sides were unable to come to an agreement at that time. However, counsel continued discussions over the next several weeks. On February 6, 2020, the parties advised the Court that they had reached a settlement in principle.

Now, with settlement complete and the necessary documents fully executed, the parties request the Court issue one final order approving this settlement agreement, which is attached, as fair and reasonable. In this regard, the parties represent to the Court that the Agreement: (a) is fair and equitable to all parties; (b) reasonably resolves a *bona fide* disagreement between the parties with regard to the merits of Plaintiffs' claims; (c) contains appropriate monetary consideration for Plaintiffs based on the claims they have raised; and (d) discontinues the action, with prejudice, and on consent. The parties and their counsel have considered that the interests of all concerned are best served by compromise, settlement, and dismissal of these claims with prejudice, in exchange for the consideration set forth in the Release. The Release is the result of arduous arms-length bargaining among the parties and reflects parties' desire to settle and compromise fully and finally all of Plaintiffs' claims asserted in this case.

## I.     The Standard

It is well-established that "[c]ourts approve FLSA settlements where they are reached as a result of contested litigation to resolve *bona fide* disputes." *Aboud v. Charles Schwab & Co.*, No. 14 Civ. 2712 (PAC), 2014 U.S. Dist. LEXIS 157205, at *10 (S.D.N.Y. Nov. 4, 2014); *Clark v. Ecolab Inc.*, No. 04 Civ. 4488 (PAC), 2010 U.S. Dist. LEXIS 47036, at *24 (S.D.N.Y. May 11, 2010); *Johnson v. Brennan*, 10 Civ. 4712 (CM), 2011 U.S. Dist. LEXIS 105775, at *35 (S.D.N.Y. Sept. 16, 2011); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 04082 (JCF), 2010 U.S. Dist. LEXIS 139136, at *15 (S.D.N.Y. Nov. 29, 2010); *deMunecas v. Bold Food LLC*, No. 09 Civ. 00440 (DAB), 2010 U.S. Dist. LEXIS 87644, at *17 (S.D.N.Y. Aug. 23, 2010). In particular, "[t]ypically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *deMunecas,* 2010 U.S. Dist. LEXIS 87644, at *20. That is, as long as the FLSA settlement "reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* at *17.

The Honorable Ona T. Wang
April 16, 2020
Page 3

## II.     The Settlement Agreement Is Fair and Reasonable and Should Be Approved

"Before a court will find a settlement fair and reasonable, the parties must provide enough information for the court to examine the *bona fides* of the dispute." *Guareno v. Vincent Perito, Inc.*, No. 14-CV-1635 (PAC), 2014 U.S. Dist. LEXIS 144038, at *2 (S.D.N.Y. Sept. 26, 2014). Here, the Settlement Agreement was clearly "reached as a result of contested litigation to resolve *bona fide* disputes." *Aboud*, 2014 U.S. Dist. LEXIS 157205, at *10. Indeed, the settlement in this matter was only reached after the complaint was filed, Defendants answered, and the parties appeared for an initial pre-trial conference. After the initial conference, the parties exchanged documents and information, which included the production of personnel files and payroll records, company policies and procedures, and certain financial documents for attorneys' eyes only. Counsel's review of the documents marked for attorneys' eyes only provided significant insight into Defendants' financial situation and the impact of a potentially large judgment, if plaintiffs' were successful in certifying a class or collective action. After this occurred, the parties met in-person over the merits of the claims. Even then, this matter could not be resolved without another 50 days of extended telephonic and electronic negotiations directly between counsel.

In this action, Plaintiffs allege that Defendants failed to pay Plaintiffs in accordance with federal and state wage and hour laws. Specifically, Plaintiffs, who were employed at various overlapping times between October 26, 2018 and March 22, 2019, allege that Defendants did not record the hours they worked and systematically underpaid them by refusing to pay overtime. Defendants further allege that because of this, Defendants improperly applied the tip credit. Finally, Plaintiffs allege that Defendants failed to provide them with proper documentation under the Wage Theft Prevention Act as required by law.

In response, Defendants maintain that Plaintiffs did not actually work the number of hours they claim to have worked, and that Defendants' time and payroll records would disprove Plaintiffs' claims. In fact, Plaintiffs' wage statements do show their tip credited wages. Any overtime or spread-of-hours premiums required are also reflected in their pay stubs, which Defendants have maintained in compliance with the record-keeping requirements of the NYLL. Finally, Plaintiffs themselves rightfully benefitted from Defendants' proper use of the tip credit, as they were able to keep substantial tips from restaurant clients to whom they rendered excellent services. Even assuming Defendants did not keep perfect records, such alleged administrative failures are cured by Defendants' proper payment for all hours worked.

The three Plaintiffs seek damages in the aggregate of $80,591.50. This number represents a best-case scenario of unpaid minimum wages, unpaid overtime, unpaid spread of hours, liquidated damages and wage notice damages. Not surprisingly, Defendants' calculations differ substantially. After reviewing payroll records, Defendants can credibly argue that Plaintiffs were properly paid tip credited hourly wages through a standard W-2 pay stub. However, the fundamental dispute between the parties will be over Plaintiffs' claims that their hours were not properly tabulated, and Plaintiffs are confident they would succeed on their claims. Defendants are likewise confident in their

The Honorable Ona T. Wang
April 16, 2020
Page 4

defense.  However, to present such a defense would entail moving forward with additional paper discovery and numerous depositions, which would consume substantial resources for an uncertain outcome. Thus, an agreement to pay Plaintiffs $50,000.00 in one lump sum to resolve the claims at issue provides far more than Defendants believe Plaintiffs would have been paid and is a fair compromise based on the risk that both parties face in moving forward in litigation. Plaintiffs' attorneys' fees and costs are also accounted for in this total.

Given these disputed issues, both parties and their counsel submit that this settlement is fair and reasonable. *See Meigel v. Flowers of the World, NYC, Inc.*, 2012 U.S. Dist. LEXIS 2359, at *2-3 (S.D.N.Y. Jan 9, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement"). In the instant case, the parties' arm's-length bargaining over the course of several months, a multi-hour Court-mandated mediation, and continued negotiations after that session ended in impasse, as well as the ability to resolve the matter without either party incurring further substantial litigation costs, are factors that weigh in favor of finding this settlement fair and reasonable. Moreover, in this agreement, Plaintiffs are only releasing their wage and hour claims, and the settlement agreement on these wage claims does not provide for confidentiality. This is a case in which the Court's discovery and mediation protocols worked in exemplary fashion and approval of the settlement would support the Court's goals in adopting those programs.

That this action was styled as a class and collective action should not bar the approval of the settlement. Plaintiffs would not be able to prove that they were treated in the same fashion as all other "food service workers and kitchen employees," as set forth in the Complaint. *See* Complaint, ¶ 1. The terms and conditions of their employment vary. Kitchen employees are paid differently than front of the house personnel, and the duties and responsibilities of the front of the house personnel also differ. Plaintiff Aguilar alone alleges that he was unpaid for the first several months of his employment and that he did not receive a pay stub of any kind, which is a markedly different allegation than his counterparts. As a result, his claims are not typical of the other putative class and collective members' claims; he might have a conflict with their interests would therefore not be a suitable class representative. If other employees believe they have the basis for any claims, which Defendants would dispute, there would be no impediment to their filing a new action and seeking all available relief in the appropriate jurisdiction.

**III.     The Attorneys' Fees and Costs Payable Under the Settlement Agreement Are Reasonable**

Bruce Menken is a named partner in Beranbaum Menken LLP. Mr. Menken is an accomplished negotiator and skilled trial lawyer.  In over 30 years of legal practice, he has a solid record of turning challenging cases into success stories for clients.  Mr. Menken entered private practice in 1993. Mr. Menken has been lead or co-counsel in several class action and whistle blower cases which have settled in the 7 and low 8 figure range. *United States of America ex rel. Richard*

The Honorable Ona T. Wang
April 16, 2020
Page 5

*Faden v. Young Adult Institute, Inc.* 09 Civ. 5003 (RMB) (filed May 28, 2009) (false claims act settlement of $18 million, of which $3.4 million allocated to relator); *Ramos, et al., v. SimplexGrinnell LP*, 796 F.Supp.2d 346 (E.D.N.Y. 2011) (certifying class of over 500 electrical and sprinkler technicians in NY state-wide prevailing wage case that settled in maintenance and repair claims for $5.525 million in 2012 and testing and inspection claims for $9.5 million in late 2014). Mr. Menken has had numerous published court decisions and several cases highlighted in The New York Law Journal and The New York Times. Finally, Mr. Menken has been recognized as a "Super Lawyer" for the New York area from 2008 through 2020.

In light of Mr. Menken's accomplishments and success, his hourly rate is $650. The hourly rate of $600 per hour was approved in *Williams v. Epic Sec. Corp.*, 368 F. Supp. 3d 651, 658 (S.D.N.Y. 2019).

Mr. Aronauer is the managing partner of The Law Offices of Jacob Aronauer. Mr. Aronauer has been practicing law since 2005 and started his own firm in 2013. Since he started his own law firm, Mr. Aronauer's practice has primarily focused on wage and hour law. Mr. Aronauer has handled close to 100 wage and hour matters. From 2018 through 2020, Mr. Aronauer was voted a "Rising Star" in the New York area by Superlawyers.

Mr. Aronauer's hourly rate is $350 an hour. Mr. Aronauer's requested hourly rate of $350 an hour was approved in *Thomas v. River Greene Constr. Grp. LLC*, 2018 U.S. Dist. LEXIS 209561, at *11-12 (S.D.N.Y. Oct. 25, 2019). This is a competitive rate in relation to what similarly situated attorneys charge. Paralegals in this case charged $150 per hour. This paralegal rate was likewise approved in *Thomas*. *Id*.

The settlement agreement also provides for Plaintiffs' counsel to receive $16,958.35 of the settlement payment. Plaintiffs' counsel is receiving 1/3 of the settlement after expenses. Plaintiffs' expenses in this matter were the filing fee and serving the Defendants.[1] As this Court and others have repeatedly held, "[c]ontingency fees of one-third in FLSA cases are routinely approved in this Circuit." *Ramirez v. Greenside Corp.*, 2017 U.S. Dist. LEXIS 30527, at *9 (S.D.N.Y. March 3, 2017) (Pitman, J.), citing *Santos v. El Tepeyac Butcher Shop Inc*., 15 Civ. 814 (RA), 2015 WL 9077172 at *3 (S.D.N.Y. Dec. 15, 2015) (Abrams, D.J.) ("courts in this District have declined to award more than one third of the net settlement amount as attorney's fees except in extraordinary circumstances"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* No. 13-CV-3234 (LB), 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013) (approving attorneys' fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiff's retainer agreement, and noting that such a fee arrangement "is routinely approved by the courts in this Circuit"); *Febus v. Guardian First Funding*

---

[1] If deemed necessary and requested by the Court, Plaintiffs' counsel is prepared to provide time records and expenses *ex parte* for in camera review.

The Honorable Ona T. Wang
April 16, 2020
Page 6

*Group, LLC,* 870 F. Supp. 2d 337, 340-41 (S.D.N.Y. 2012) (Stein, D.J.) ("a fee that is one-third of the fund is typical" in FLSA cases).

In line with this authority, the Parties respectfully submit that Plaintiffs' counsel's fee, which is one-third of the settlement amount plus out-of-pocket costs, is reasonable and should be approved.

## IV.   CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court approve the settlement in this matter as set forth above and in the Settlement Agreement, discontinuing the action with prejudice.

Thank you for your attention to this matter.

Respectfully,

/s/ Adam E. Collyer

Adam E. Collyer of
LEWIS BRISBOIS BISGAARD & SMITH LLP

Jacob Aronauer of
THE LAW OFFICES OF JACOB ARONAUER

Bruce Menken of
BERANBAUM MENKEN LLP

AEC